**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TRANSFIRST GROUP, INC. f/k/a** | § | |
| **TransFirst Holdings, Inc., et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-1918-L |
| | § | |
| **DOMINIC J. MAGLIARDITI;** | § | |
| **FRANCINE MAGLIARDITI, in her** | § | |
| **individual capacity, and as trustee of** | § | |
| **FRM TRUST, DJM IRREVOCABLE** | § | |
| **TRUST and the FANE TRUST; ATM** | § | |
| **ENTERPRISES, LLC; DII CAPITAL,** | § | |
| **INC.; DFM HOLDINGS, LTD.; DFM** | § | |
| **HOLDINGS, LP; DII PROPERTIES** | § | |
| **LLC; and SPARTAN PAYMENT** | § | |
| **SOLUTIONS, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Dominic J. Magliarditi's Amended Rule 12 Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and for Failure to State a Claim, Motion for More Definite Statement, and Motion to Strike, filed August 24, 2016 (Doc. 14); and the remaining Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, Motion for More Definite Statement, and Motion to Strike, filed September 15, 2016 (Doc. 18).  After careful consideration of the motions, pleadings, record, and applicable law, the court determines that it has personal jurisdiction over Mr. Magliarditi; Francine Magliarditi, as sued in her capacity as trustee of FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC.  The court is in the process of determining the remainder of Defendants' challenges presented in their

**Memorandum Opinion and Order - Page 1**

respective motions, and whether it has personal jurisdiction over Mrs. Magliarditi, as sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, all of which will be addressed in a separate order in the near future.

## I.   Factual History and Procedural Background

Plaintiffs are TransFirst Group, Inc. f/k/a TransFirst Holdings, Inc. ("Transfirst"), a Delaware corporation with its principal place of business in Hauppauge, New York; and two Delaware limited liability companies, TransFirst Third Party Sales, LLC and Payment Resources International, LLC, whose sole member is TransFirst.  Plaintiffs have a judgment in the amount of $4,486,725 against Defendant Dominic J. Magliarditi ("Mr. Magliarditi").  The judgment was obtained in a separate lawsuit brought by Plaintiffs against Mr. Magliarditi and others in 2006. *See TransFirst Holdings, Inc., et al. v. Dominic J. Magliarditi, et al.*, Case No. 3:06-CV-2303-C, in the United States District Court for the Northern District of Texas (the "2006 Action").[1] Following a three-week bench trial in 2009, the Honorable Jorge A. Solis adjudged Mr. Magliarditi and other entities liable for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and found that Mr. Magliarditi had lied under oath in sworn interrogatory responses and affidavits.  On August 30, 2011, Judge Solis entered a final judgment and, after several amendments, on April 22, 2013, entered the Third Amended Final Judgment (the "Judgment") against Mr. Magliarditi and the other entities and in favor of Plaintiffs in the amount of $4,486,725.

---

[1] The court takes judicial notice of the docket sheet and filings in the 2006 Action.  *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *see also* Fed. R. Evid. 201.  Further, on May 2, 2016, following the retirement of the Honorable Chief Judge Jorge A. Solis, the 2006 Action was transferred to the docket of the Honorable Sam R. Cummings, Senior United States District Judge.

In June 2014, the United States Court of Appeals for the Fifth Circuit affirmed the Judgment. *TransFirst Holdings Inc. v. Magliarditi*, 574 F. App'x 345 (5th Cir. 2014). Between entry of the Judgment, and continuing until the present, Plaintiffs have sought to uncover Mr. Magliarditi's assets and to enforce the Judgment in this District, as well as in California and Nevada. Among other things, a postjudgment discovery dispute between Plaintiffs and Mr. Magliarditi was referred to Magistrate Judge Paul D. Stickney who, on August 6, 2015, overruled Mr. Magliarditi's objections to postjudgment discovery requests, sanctioned him, and ordered him to travel to Texas at his own expense to testify in a postjudgment deposition in the court's Chambers in Dallas, which took place on September 16, 2015. That litigation is ongoing, as evidenced by recent docket entries in 2016 and 2017.

On June 30, 2016, Plaintiffs filed this lawsuit against judgment debtor Mr. Magliarditi and several defendants who were not parties to the 2006 Action, alleging that Mr. Magliarditi fraudulently transferred assets to these new defendants in an effort to frustrate Plaintiffs' ongoing efforts to collect on the Judgment. The new defendants include Mr. Magliarditi's wife, Francine Magliarditi ("Mrs. Magliarditi"), sued in her individual capacity and as trustee of FRM Trust, DJM Irrevocable Trust, and Fane Trust (the "Trust Defendants"); as well as ATM Enterprises LLC; DII Capital, Inc.; DFM Holdings, Ltd.; DFM Holdings, LP; DII Properties LLC; and Spartan Payment Solutions, LLC (the "Shell Company Defendants").

In Plaintiffs' First Amended Complaint ("Complaint" or "Compl.") (Doc. 11), Plaintiffs allege that, to date, Mr. Magliarditi has only paid $62 toward the Judgment. Plaintiffs allege that Mr. Magliarditi and Mrs. Magliarditi "are working together to defraud Plaintiffs and prevent them from collecting on the Judgment by hiding and transferring assets through the use of a labyrinth of layered shell companies and trusts [which are] shams, existing for no reason other than to hide

**Memorandum Opinion and Order - Page 3**

assets, defraud Transfirst, and otherwise act as the alter ego of [Mr. Magliarditi]." *Id.* at 2. Seeking to unwind the alleged fraudulent transfers and to hold Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants liable for the Judgment entered in the 2006 Action, Plaintiffs assert the following causes of action: (1) fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.006(b) and 24.005(a); (2) unjust enrichment; and (3) alter ego, alleging that Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants "are alter-egos of [Mr. Magliarditi] and, therefore, they should be held jointly and severally liable with [him] on the Judgment." Compl. at 2-3. Plaintiffs seek compensatory damages, restitution, punitive and exemplary damages, attorney's fees, injunctive relief, appointment of a receiver, and any other relief to which they are entitled. *Id.* at 30-31.

Defendants have moved to dismiss the Complaint on a variety of grounds, including for lack of personal jurisdiction, improper venue, and for failure to state a claim; or, alternatively, request that the court strike portions of the Complaint and direct Plaintiffs to file more particularized averments with regard to the fraudulent conveyance claim pursuant to Federal Rule of Civil Procedure 12(e). Having considered the motions, pleadings, record, and applicable law, the court finds that it has personal jurisdiction over Mr. Magliarditi, the Trust Defendants, DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC. The remaining arguments raised in Defendants' respective motions and also whether the court has personal jurisdiction over Mrs. Magliarditi, sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, will be addressed in a separate order which is forthcoming.

## II.     Legal Standards for Rule 12(b)(2) - Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham*

**Memorandum Opinion and Order - Page 4**

*v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.  The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  *Burger King*, 471 U.S. at 475 (citations omitted).  The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction.  *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).  Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.  *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies.  *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987).  As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'"  *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger*

*King*, 471 U.S. at 277).  In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state."  *Id.*  (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.    Analysis

Defendants move to dismiss for lack of personal jurisdiction.  The court first addresses whether Plaintiffs have met their burden of presenting a prima facie case for the exercise of personal jurisdiction over Mr. Magliarditi.

### A.        Personal Jurisdiction over Mr. Magliarditi

Personal jurisdiction over Mr. Magliarditi is premised primarily on the court's inherent authority to enforce its Judgment entered in the 2006 Action, where Judge Solis found that the court had personal jurisdiction over Mr. Magliarditi and entered a Judgment against him in the amount of $4,486,725.  Second, Plaintiffs assert that the court has personal jurisdiction over Mr. Magliarditi because he has conducted business in Texas for over a decade and committed specific acts in Texas that give rise to this lawsuit.

The court finds that it has personal jurisdiction over Mr. Magliarditi.  This lawsuit is in essence a continuation of a series of postjudgment proceedings to enforce the Judgment in the 2006 Action and to halt the alleged secretion and dissipation of assets by Mr. Magliarditi.  Because Plaintiffs now seek to enforce the Judgment not only against Mr. Magliarditi but also against non-parties to the 2006 Action under the alter-ego doctrine, the proper vehicle is to file this related action, rather than initiate turnover proceedings under Tex. Civ. Prac. & Rem. Code § 31.002 in the 2006 Action.  *See generally Bollore v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006) (and cases cited therein) ("Texas courts construing the turnover statute have expressly and

consistently held that it may be used to reach only the assets of the parties to the judgment, not the assets of non-judgment third parties."); s*ee also Maiz v. Virani*, 2000 WL 34200775, at *3 (N.D. Tex. Sep. 7, 2000) (Sanders, J.) ("One cannot use the [Texas] turnover statute to reach the assets of corporations [that] are allegedly alter egos of the Judgment Debtors without a separate proceeding to pierce the corporate veil.").  Nonetheless, the Judgment in the Northern District of Texas is sufficient to create specific jurisdiction over Mr. Magliarditi for the narrow category of actions, such as this one, to enforce the Judgment against him.

Moreover, Mr. Magliarditi has been litigating in Texas since 2006, and continues to defend the 2006 Action in the Northern District of Texas, clearly invoking the benefits and protections of Texas laws.  The cause of action here—to collect on the Judgment against Mr. Magliarditi (and hold the alleged alter-ego Defendants liable for the Judgment)—obviously has a substantial nexus with that activity.  Thus, this court, and other courts in Texas, have personal jurisdiction over Mr. Magliarditi to enforce the Judgment, whether by way of the turnover statute or this related lawsuit. *See generally Wilmington Trust Co. v. Hellas Telecommc'ns*, 2016 WL 7339112, at *8 (S.D.N.Y. Aug. 4, 2016) (In an action brought by a judgment creditor against an out-of-state judgment debtor and other alleged alter egos of the debtor alleging conversion and unjust enrichment, a previously entered New York judgment was sufficient to create personal jurisdiction in New York over the out-of-state judgment debtor "for the narrow category of actions to enforce a judgment."); *Limbright v. Hofmeister*, 2009 WL 915803, at *5 (E.D. Mich. Mar. 31, 2009) (In an action brought by a judgment creditor against an out-of-state judgment debtor alleging fraudulent conveyance by debtor to alleged alter-ego defendants in frustration of the judgment, the court retained personal jurisdiction over out-of-state judgment debtor who had "submitted to [its] jurisdiction in the first

place, [and therefore remained] subject to [its] continued jurisdiction relating to the same issue, even if [the] subsequent action is based on a modified complaint.").

Further, this is not one of those rare cases in which the court's exercise of personal jurisdiction over Mr. Magliarditi would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe*, 326 U.S. at 316). As aptly stated by one court:

> Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

*Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (quoting *Berry v. Midtown Serv. Corp.,* 104 F.2d 107, 110 (2d Cir. 1939)).

For the foregoing reasons, the court finds that it has personal jurisdiction over judgment debtor Mr. Magliarditi.  The court now addresses whether it may exercise personal jurisdiction over the Trust Defendants, DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC.

### B.     Personal Jurisdiction over the Trust Defendants, DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC

Personal jurisdiction over the Trust Defendants, DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC (collectively, the "Entity Defendants") is premised on (i) the theory that they have engaged in intentional conduct designed to cause harm in Texas, namely, a scheme to defraud Plaintiffs out of money owed them under the Judgment; and (ii) various piercing-the-corporate-veil theories, including alter ego and sham to perpetrate fraud on Plaintiffs. The court first addresses Plaintiffs' argument that the court has specific personal jurisdiction over

the Entity Defendants based on their alleged participation in a tortious scheme to defraud Plaintiffs and defeat their ability to collect amounts owed under the Judgment.

### 1.   *Minimum Contacts Analysis*

Plaintiffs argue that even though the Entity Defendants may be participating in this alleged scheme from Nevada, this does not place them beyond this court's reach, as the harm they are causing is being felt in Texas.  In advancing this argument, Plaintiffs rely on *Calder v. Jones*, 465 U.S. 783 (1984), which, as interpreted by the Fifth Circuit, held that "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789-90).  Plaintiffs also reference this court's application of *Calder* in *Sourcing Management, Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 910-11 (N.D. Tex. 2015) (Lindsay, J.); and applied by the Fifth Circuit in *Dontos v. Vendomation NZ Ltd.,* 582 F. App'x 338, 344-45 (5th Cir. 2014), and *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 402 (5th Cir. 2009).  *See* Pls.' Resp. Br. 4-6 (Doc. 27).  Plaintiffs contend that these cases provide the legal authority to allow this court to exercise personal jurisdiction over the Entity Defendants.  The court disagrees.

Plaintiffs' reliance on *Sourcing Management*, *Dontos*, and *Mullins* is misplaced, and their interpretation of these cases is unduly expansive and goes far beyond what those courts held.  In *Sourcing Management*, the court concluded that the plaintiff "made a prima facie showing that [defendant] established minimum contacts with Texas sufficient for [it] to exercise specific jurisdiction over [defendant]" when the defendant "intentionally impaired [plaintiffs'] ability to collect on its Texas judgment . . . by colluding to transfer [another defendants'] assets via a private

**Memorandum Opinion and Order - Page 10**

foreclosure sale." 118 F. Supp. 3d at 911. In *Dontos*, the Fifth Circuit reversed the district court and held that personal jurisdiction over out-of-state defendants was present where plaintiff alleged that defendants participated in a scheme to fraudulently transfer assets to prevent a Texas creditor-plaintiff from collecting a pre-existing Texas judgment in violation of TUFTA. 582 F. App'x at 348. In *Mullins*, the Fifth Circuit upheld the district court's exercise of personal jurisdiction over a nonresident defendant that had no other contacts with Texas except for its involvement in a fraudulent transfer scheme that affected "a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas." 564 F.3d at 402.

There is a notable distinction between this case, on the one hand, and *Sourcing Management*, *Dontos,* and *Mullins*, on the other hand. Each of those cases involved plaintiffs that were Texas residents, and this, among other things, created a connection to Texas aside from the judgment issued in a Texas court. *Sourcing Management* involved a Texas creditor attempting to collect on its Texas Judgment. 118 F. Supp. 3d at 910. *Dontos* involved transfers that impaired the rights of a Texas resident. In explaining its reason for exercising personal jurisdiction, the court in *Dontos* stated: "[W]hen a nonresident defendant receives Texas property or a Texas contract, for the purpose of defrauding a Texas resident, the nonresident defendant is subject to suit in Texas courts." 582 F. App'x at 347 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009)). In *Mullins*, the "debtor-creditor relationship between [the parties] [was] centered in Texas." 564 F. 3d at 402. The plaintiff in *Mullins* was a Texas creditor, the conduct that thwarted payment occurred in Texas, and the parties' business relationship contract was governed by Texas law; therefore, the case involved multiple contacts with Texas separate from the judgment.

**Memorandum Opinion and Order - Page 11**

In this case, there are no allegations that the fraudulent transfers occurred in Texas or involved any Texas entities.  According to the Complaint, the entities that allegedly participated in the transfers are domiciled in Nevada, and Plaintiffs that are unable to recover on the Judgment are domiciled in Delaware and New York.  While Transfirst had a principal place of business in Dallas, Texas, when it initiated the 2006 Action alleging RICO violations, Transfirst has since moved its principal place of business to Hauppauge, New York.  The only connection to Texas that Plaintiffs have is the Judgment issued in the 2006 Action.  Plaintiffs have failed to cite any case to support their argument that the Judgment itself, without more, is sufficient to allow the court to exercise personal jurisdiction over out-of-state defendants who were not parties to the underlying action in which the Judgment was issued.

In sum, Plaintiffs have failed to establish a prima facie case that the Entity Defendants have sufficient minimum contacts with Texas such that the exercise of personal jurisdiction over them would be proper.  *See Burger King*, 471 U.S. at 475.

### 2.  Alter-Ego Analysis

As an alternative to the traditional minimum contacts analysis, Plaintiffs argue that personal jurisdiction may be exercised over the Entity Defendants because they are alter egos of Mr. Magliarditi.

### a.  Personal Jurisdiction Over an Alter Ego

The Fifth Circuit has recognized that personal jurisdiction may be established over an individual or corporation through a piercing-the-corporate-veil or alter-ego theory.  *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).  As the Fifth Circuit explained in *Patin*:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not otherwise be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of the one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis.

*Patin*, 294 F.3d at 653. "Further, the piercing-the-corporate-veil test for attribution of contacts, i.e., personal jurisdiction, is less stringent than for liability." *Ingenious Invs., Inc. v. Bombart*, 2006 WL 1582080, at *3 (N.D. Tex. Jan. 20, 2006) (McBryde, J.) (internal quotation marks and citation omitted).

The alter-ego doctrine permits a court to disregard the corporate fiction under certain circumstances to hold an individual liable for the debts of a corporation or to hold a corporation liable for the debts of an individual. *See Leon, Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.—El Paso 1993, no writ). Traditional veil-piercing uses the alter-ego doctrine to break through corporate formalities and include the assets of a shareholder or other corporate insider as assets of a corporation. *See In re Moore*, 379 B.R. 284, 291 (Bankr. N.D. Tex. 2007). Reverse veil-piercing, at issue in this case, "is a common law doctrine recognized in many states, including Nevada and Texas, that renders the assets of a corporation liable for the debts of a corporate insider based on a showing that the corporate entity is actually the alter ego of the individual." *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856, at *9 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (and cases cited therein). Nevada courts have held that "[i]t is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid a pre-existing liability of the controlling party." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903 (Nev. 2000).

**Memorandum Opinion and Order - Page 13**

### b.  The Entity Defendants

The court now turns to the Entity Defendants.  Under Nevada law, courts consider the following factors as indicative of the existence of an alter-ego relationship: "commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities."  *LFC Mktg. Grp.*, 116 Nev. at 904 (citation omitted).  Nevada courts, however, have emphasized that "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case."  *Id.* (citation omitted).  Having considered the motion, pleadings, and applicable law, the court concludes that Plaintiffs have set forth sufficient allegations under the alter-ego and veil-piercing doctrines to establish a prima facie case of personal jurisdiction over the Entity Defendants.  *See* Compl. ¶¶ 44-60, 91-107.

Further, as alleged alter egos of Mr. Magliarditi, over whom the court has personal jurisdiction, and in light of Plaintiffs' demonstrated inability to collect on the Judgment notwithstanding several years of postjudgment discovery and proceedings, the court concludes that this is not one of those rare cases in which the court's exercise of personal jurisdiction over the Entity Defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe*, 326 U.S. at 316).

## IV.   Conclusion

For the reasons herein stated, the court determines that it has personal jurisdiction over Mr. Magliarditi, the Trust Defendants, DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC.  Whether the court has personal jurisdiction over Mrs. Magliarditi, as sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, will be addressed in a separate

order, which will also address the remainder of Defendants' arguments presented in their respective motions.

**It is so ordered** this 9th day of February, 2017.

Sam A. Lindsay
United States District Judge