IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TRANSFIRST GROUP, INC. f/k/a** TransFirst Holdings, Inc., et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| **DOMINIC J. MAGLIARDITI; FRANCINE MAGLIARDITI, in her individual capacity, and as trustee of FRM TRUST, DJM IRREVOCABLE TRUST and the FANE TRUST; ATM ENTERPRISES, LLC; DII CAPITAL, INC.; DFM HOLDINGS, LTD.; DFM HOLDINGS, LP; DII PROPERTIES LLC; and SPARTAN PAYMENT SOLUTIONS, LLC,** | § § § § § § § § § § § | **Civil Action No. 3:16-CV-1918-L** **(Filed Under Seal and Ex Parte)** |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Other Equitable Relief, filed July 8, 2016 (Doc. 6). For the reasons herein explained, Plaintiffs' *Ex Parte* Application for Temporary Restraining Order is **granted** with respect to Defendants Dominic J. Magliarditi; Francine Magliarditi sued in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; and **denied without prejudice** as to Defendants Francine Magliarditi, sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP.[1]

---

[1] In a separate order issued earlier today, the court found that it had personal jurisdiction over Defendants Dominic J. Magliarditi; Francine Magliarditi sued in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions,

Plaintiffs' Motion for Preliminary Injunction will be ruled upon after notice to Defendants in accordance with Federal Rule of Civil Procedure 65(a)(1).

## I.     Factual and Procedural Background

Plaintiffs are TransFirst Group, Inc. f/k/a TransFirst Holdings, Inc. ("Transfirst"), a Delaware corporation with its principal place of business in Hauppauge, New York; and two Delaware limited liability companies, TransFirst Third Party Sales, LLC and Payment Resources International, LLC, whose sole member is TransFirst. Plaintiffs have a judgment in the amount of $4,486,725 against Defendant Dominic J. Magliarditi ("Mr. Magliarditi"). The judgment was obtained in a separate lawsuit brought by Plaintiffs against Mr. Magliarditi and others in 2006. *See TransFirst Holdings, Inc., et al. v. Dominic J. Magliarditi, et al.*, Case No. 3:06-CV-2303-C, in the United States District Court for the Northern District of Texas (the "2006 Action").[2] Following a three-week bench trial in 2009, the Honorable Jorge A. Solis adjudged Mr. Magliarditi and other entities liable for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and found that Mr. Magliarditi had lied under oath in sworn interrogatory responses and affidavits. On August 30, 2011, Judge Solis entered a final judgment and, after several amendments, on April 22, 2013, entered the Third Amended Final Judgment (the "Judgment") against Mr. Magliarditi and the other entities and in favor of Plaintiffs in the amount of $4,486,725.

---

LLC. The court will consider whether it has personal jurisdiction over Francine Magliarditi, sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, in a separate order, and thus Plaintiffs' *Ex Parte* Application for Temporary Restraining Order is **denied without prejudice** as to these three Defendants.

[2] The court takes judicial notice of the docket sheet and filings in the 2006 Action. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *see also* Fed. R. Evid. 201. Further, on May 2, 2016, following the retirement of the Honorable Chief Judge Jorge A. Solis, the 2006 Action was transferred to the docket of the Honorable Sam R. Cummings, Senior United States District Judge.

**Memorandum Opinion and Order - Page 2**

In June 2014, the United States Court of Appeals for the Fifth Circuit affirmed the Judgment. *TransFirst Holdings Inc. v. Magliarditi*, 574 F. App'x 345 (5th Cir. 2014). Between entry of the Judgment, and continuing until the present, Plaintiffs have sought to uncover Mr. Magliarditi's assets and to enforce the Judgment in this District, as well as in California and Nevada. Among other things, a postjudgment discovery dispute between Plaintiffs and Mr. Magliarditi was referred to Magistrate Judge Paul D. Stickney who, on August 6, 2015, overruled Mr. Magliarditi's objections to postjudgment discovery requests, sanctioned him, and ordered him to travel to Texas at his own expense to testify in a postjudgment deposition in the court's Chambers in Dallas, which took place on September 16, 2015. Further, on June 29, 2016, after numerous failed attempts to depose Mrs. Magliarditi in Texas and in California, Plaintiffs deposed her in Nevada, where she provided testimony that Mr. Magliarditi continues to exercise sole control over assets in various closely held companies and trusts, testimony inconsistent with Mr. Magliarditi's prior testimony that he was no longer affiliated with the companies and trusts and that his wife had exclusive control over those entities, leaving him with no funds to pay the Judgment. That litigation is ongoing, as evidenced by recent docket entries in 2016 and 2017.

On June 30, 2016, one day after deposing Francine Magliarditi, Plaintiffs filed this lawsuit against judgment debtor Mr. Magliarditi and several defendants who were not parties to the 2006 Action, alleging that Mr. Magliarditi fraudulently transferred assets to these new defendants in an ongoing effort to defraud Plaintiffs and prevent them from collecting on the Judgment. The new defendants include Mr. Magliarditi's wife, Francine Magliarditi ("Mrs. Magliarditi"), sued in her individual capacity, and as trustee of FRM Trust, DJM Irrevocable Trust, and Fane Trust (the "Trust

Defendants"); ATM Enterprises LLC; DII Capital, Inc.; DFM Holdings, Ltd.; DFM Holdings, LP; DII Properties LLC; and Spartan Payment Solutions, LLC (the "Shell Company Defendants").

In Plaintiffs' First Amended Complaint ("Complaint" or "Compl.") (Doc. 11), Plaintiffs allege that, to date, Mr. Magliarditi has only paid $62 toward the Judgment. Plaintiffs allege that Mr. Magliarditi and Mrs. Magliarditi, "are working together to defraud Plaintiffs and prevent them from collecting on the Judgment by hiding and transferring assets through the use of a labyrinth of layered shell companies and trusts [which are] shams, existing for no reason other than to hide assets, defraud Transfirst, and otherwise act as the alter ego of [Mr. Magliarditi]." *Id.* at 2. Seeking to unwind the alleged fraudulent transfers and to hold Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants liable for the Judgment entered in the 2006 Action, Plaintiffs assert the following causes of action: (1) fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.006(b) and 24.005(a); (2) unjust enrichment; and (3) alter ego, alleging that Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants "are alter-egos of [Mr. Magliarditi] and, therefore, they should be held jointly and severally liable with [him] on the Judgment." Compl. at 2-3. Plaintiffs seek compensatory damages, restitution, punitive and exemplary damages, attorney's fees, injunctive relief, appointment of a receiver, and any other relief to which they are entitled. *Id.* at 30-31.

On July 8, 2016, Plaintiffs filed their sealed request for an *ex parte* temporary restraining order seeking to enjoin Mr. Magliarditi, Mrs. Magliarditi, in her individual capacity, and the alleged alter-ego Defendants, and their agents, subsidiaries, and affiliates, from, directly or indirectly: (1) transferring, concealing, withdrawing, or otherwise disposing of any assets, property, or funds that they control or possess; (2) opening or closing accounts; (3) opening or accessing safe deposit boxes

**Memorandum Opinion and Order - Page 4**

or rental storage units; and (4) opening or creating any new entities or trusts without prior approval of the court. Plaintiffs assert that their application for a temporary restraining order must be pursued *ex parte*; otherwise, Mr. Magliarditi "will simply move his money to undisclosed accounts, as he has previously done over the past several years." Pls.' App. for TRO 3 (Doc. 6).

By separate order issued earlier today, the court found that Plaintiffs had established a prima facie case for the court's exercise of personal jurisdiction over Mr. Magliarditi, the Trust Defendants, ATM Enterprises, LLC; DII Capital, Inc.; DII Properties LLC; and Spartan Payment Solutions, LLC (hereinafter, the "Enjoined Defendants"). Whether the court has personal jurisdiction over the remaining Defendants, namely, Mrs. Magliarditi, sued in her individual capacity, and the partnership entities (Defendants DFM Holdings, Ltd. and DFM Holdings, LP) is under consideration. A decision addressing whether the court has personal jurisdiction over Mrs. Magliarditi, sued in her individual capacity, and the partnership entities, will issue in the near future. Accordingly, this order only applies to the Enjoined Defendants.

## II.     Standard for Ex Parte TRO and Preliminary Injunction

There are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order ("TRO"). A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy

**Memorandum Opinion and Order - Page 5**

a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction. Because a preliminary injunction is considered an "extraordinary and drastic remedy," it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Mississippi Power & Light Co.*, 760 F.2d at 621.

A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.). The purpose of a TRO is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any TRO, therefore, is a temporary measure to protect rights until a hearing can be held.

As previously noted, Plaintiff seeks an *ex parte* TRO. Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, the court may issue a TRO without notice to the adverse party or its attorney only if both of the following requirements are met:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

**Memorandum Opinion and Order - Page 6**

Fed. R. Civ. P. 65(b)(1)(A)-(B). Thus, a TRO cannot be issued *ex parte* absent a clear showing that immediate and irreparable injury will result before the adverse party can be heard. *Id.*

### III.   Discussion

After carefully reviewing Plaintiffs' Amended Complaint (Doc. 11), application for a TRO and injunctive relief (Doc. 6), Declaration of Adam Sanderson filed in support of the application for TRO (Doc. 6-1), and evidence submitted in support (Doc. 6-1 through Doc. 6-13), the court **concludes** that Plaintiffs have made a sufficient showing to satisfy the requirements for a TRO.

####   A.   Substantial Likelihood of Prevailing on the Merits

The court first considers whether Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of this action in which Plaintiffs seek to pierce the corporate veil and hold Defendants liable for the Judgment as Mr. Magliarditi's alter egos.

The alter-ego doctrine permits a court to disregard the corporate fiction under certain circumstances to hold an individual liable for the debts of a corporation or to hold a corporation liable for the debts of an individual. *See Leon, Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.—El Paso 1993, no writ). Traditional veil-piercing uses the alter-ego doctrine to break through corporate formalities and include the assets of a shareholder or other corporate insider as assets of a corporation. *See In re Moore*, 379 B.R. 284, 291 (Bankr. N.D. Tex. 2007). Reverse veil-piercing, at issue in this case, "is a common law doctrine recognized in many states, including Nevada and Texas, that renders the assets of a corporation liable for the debts of a corporate insider based on a showing that the corporate entity is actually the alter ego of the individual." *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856, at *9 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (and cases cited therein). Nevada courts have held that "[i]t is particularly

**Memorandum Opinion and Order - Page 7**

appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid a pre-existing liability of the controlling party." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903 (Nev. 2000).[3] Under Nevada law, courts consider the following factors as indicative of the existence of an alter-ego relationship: "commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *LFC Mktg. Grp.*, 116 Nev. at 904 (citation omitted). Nevada courts, however, have emphasized that "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.* (citation omitted).

Having considered the allegations, legal briefing, Declaration of Adam Sanderson, and supporting evidence filed with Plaintiffs' request for a TRO, including the sworn deposition testimony of Mr. Magliarditi, sworn deposition testimony of Mrs. Magliarditi, financial records, QuickBooks records of DII Capital, Inc. and ATM Enterprises, LLC, as well as applicable law summarized above, the court concludes that Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claim that the Trust Defendants, ATM Enterprises, LLC, DII Capital, Inc., DII Properties LLC, and Spartan Payment Solutions, LLC, are merely conduits for Mr. Magliarditi's fraud, acting as his alter egos, and existing to fund Mr. Magliarditi's personal expenses and conceal assets that would otherwise be available to satisfy the Judgment.

---

[3] Whether the corporate entity can be disregarded is determined by the law of the state of incorporation for each entity, in this case Nevada. *See Ingenious Invs., Inc. v. Bombart*, 2006 WL 1582080, at *3 (N.D. Tex. Jan. 20, 2006) (McBryde, J.); *Davaco, Inc. v. AZ3, Inc.*, 2008 WL 2243382, at *3 (N.D. Tex. May 30, 2008) (Boyle, J.).

**Memorandum Opinion and Order - Page 8**

### B. Substantial Threat that Irreparable Harm Will Result Absent the Injunction

Further, Plaintiffs present evidence to support their contention that there is a substantial risk that, absent a restraining order, assets available to satisfy the Judgment will continue to be transferred and dissipated, and that prompt action is required. Given Mr. Magliarditi's conduct in the 2006 Action, in which Judge Solis found that he had willfully provided false testimony concerning material matters in an effort to influence the outcome of the proceeding, as well as his postjudgment discovery abuses, as evidenced by Magistrate Judge Paul Stickney's order sanctioning him, and evidence presented concerning the conveyance of funds to the alleged alter-ego Defendants, the court is persuaded that absent the injunction, the Judgment entered in the 2006 Action will continue to go unpaid, as it already has for several years.

### C. Threat of Injury to Movants Outweighs Threat of Harm to Defendants

With respect to the third factor, the court determines that the threat of harm to Defendants, if any, is not greater than that to Plaintiffs, who have been unable to collect on their Judgment entered in the 2006 Action. If enjoined, Mr. Magliarditi will still have an opportunity to seek leave of court to distribute specific funds for specific purposes to his family members upon a showing of good cause. Moreover, any harm to Defendants has been caused by Mr. Magliarditi's recalcitrant and contumacious conduct in refusing to pay a lawful judgment.

### D. Granting Injunctive Relief Will Not Disserve the Public Interest

As to the fourth factor, the court finds that granting the TRO will not disserve the public interest. The public has an interest in ensuring that judgments issued by the courts, and affirmed on appeal, are enforced, and in preventing judgment debtors from unlawfully transferring and otherwise dissipating assets instead of paying their judgment creditors. Plaintiffs have also satisfied Rule

**Memorandum Opinion and Order - Page 9**

65(b)(1)'s specific requirements for an *ex parte* TRO. The court, therefore, will grant Plaintiffs' request for an *ex parte* TRO.

### IV. Conclusion and TRO

For the reasons herein stated, Plaintiffs' Motion for a Preliminary Injunction will be ruled upon at a later date after notice is given to Defendants in accordance with Federal Rule of Civil Procedure 65(a)(1). With respect to Plaintiffs' request for an *ex parte* TRO, the court **grants** Plaintiffs' *Ex Parte* Application for Temporary Restraining Order (Doc. 6) as to Defendants Dominic J. Magliarditi; Francine Magliarditi in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; and **denies without prejudice** Plaintiffs' *Ex Parte* Application for Temporary Restraining Order as to Defendants Francine Magliarditi, sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings; and **orders** as follows:

1. Dominic J. Magliarditi; Francine Magliarditi in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; and their officers, agents, servants, employees, and attorneys, and all other persons in active concert with the identified parties in this subparagraph, are hereby **enjoined** from, directly or indirectly: (1) transferring, concealing, withdrawing, or otherwise disposing of any assets, property, or funds that they control or possess; (2) opening or closing accounts; (3) opening or accessing safe deposit boxes or rental storage units; and (4) opening or creating any new entities or trusts without prior approval of the court;

2. Plaintiffs are hereby **authorized** to notify financial institutions and other persons who may control or possess property, funds, and assets belonging to, or held for the benefit of, any

      Enjoined Defendant, of the existence of the above-described temporary restraining order, so that Plaintiffs can obtain an honest accounting of the Enjoined Defendants' property and assets and the value thereof;

3. Plaintiffs are hereby **granted** the right to serve the Enjoined Defendants by alternate means, specifically, by delivery of a copy of all relevant papers to Dominic Magliarditi's attorneys in the 2006 Action, as well as also delivering a copy of all relevant papers to the Nevada residential address of Dominic and Francine Magliarditi;

4. Plaintiffs **shall** post a surety or cash bond in the amount of **$25,000** with the United States District Clerk.  **This TRO shall not be effective until a bond is posted with the clerk in accordance with this memorandum opinion and order**; and

5. The court further **directs** Plaintiffs' counsel to provide a copy of this TRO to the Enjoined Defendants, their agent(s), or their attorney(s) by **12 p.m., February 13, 2017.**

**It is so ordered** at **4:15 p.m.**, this **9th day** of **February, 2017**.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge