IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TRANSFIRST GROUP, INC. f/k/a TransFirst Holdings, Inc., *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>DOMINIC J. MAGLIARDITI; FRANCINE MAGLIARDITI, in her individual capacity, and as trustee of FRM TRUST, DJM IRREVOCABLE TRUST and the FANE TRUST; ATM ENTERPRISES, LLC; DII CAPITAL, INC.; DFM HOLDINGS, LTD.; DFM HOLDINGS, LP; DII PROPERTIES LLC; and SPARTAN PAYMENT SOLUTIONS, LLC,<br><br>  Defendants. | Case No. 2:17-cv-00487-APG-VCF |

## TEMPORARY RESTRAINING ORDER

Before the court is the plaintiffs' oral motion for a temporary restraining order, made at the March 27, 2017 hearing in this matter. For the reasons herein explained, and for the reasons given on the record during that hearing, Plaintiffs' motion is **granted** with respect to defendants Dominic J. Magliarditi; Francine Magliarditi sued in her individual capacity and in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; DFM Holdings, Ltd.; and DFM Holdings, LP.

The plaintiffs' Motion for Preliminary Injunction (ECF No. 6) is set for hearing on April 10, 2017 beginning at 9:00 a.m.

/ / / /

I.    **Factual and Procedural Background**

The plaintiffs are TransFirst Group, Inc. f/k/a TransFirst Holdings, Inc. ("TransFirst"), a Delaware corporation with its principal place of business in Hauppauge, New York; and two Delaware limited liability companies: TransFirst Third Party Sales, LLC and Payment Resources International, LLC, whose sole member is TransFirst. Plaintiffs have a judgment in the amount of $4,486,725 against defendant Dominic J. Magliarditi. The judgment was obtained in a separate lawsuit brought by the plaintiffs against Mr. Magliarditi and others in 2006. *See TransFirst Holdings, Inc., et al. v. Dominic J. Magliarditi, et al.*, Case No. 3:06-CV-2303-C, in the United States District Court for the Northern District of Texas (the "2006 Action").[1] Following a three-week bench trial in 2009, the Honorable Jorge A. Solis adjudged Mr. Magliarditi and other entities liable for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and found that Mr. Magliarditi had lied under oath in sworn interrogatory responses and affidavits. On August 30, 2011, Judge Solis entered a final judgment and, after several amendments, on April 22, 2013 he entered the Third Amended Final Judgment (the "Judgment") against Mr. Magliarditi and the other entities and in favor of Plaintiffs in the amount of $4,486,725. In June 2014, the United States Court of Appeals for the Fifth Circuit affirmed the Judgment. *TransFirst Holdings Inc. v. Magliarditi*, 574 F. App'x 345 (5th Cir. 2014).

Between entry of the Judgment, and continuing until the present, the plaintiffs have sought to uncover Mr. Magliarditi's assets and to enforce the Judgment in various jurisdictions. Among other things, a postjudgment discovery dispute between the plaintiffs and Mr. Magliarditi was referred to Magistrate Judge Paul D. Stickney in Texas who, on August 6, 2015, overruled Mr. Magliarditi's objections to postjudgment discovery requests, sanctioned him, and ordered him to

---

[1] The court takes judicial notice of the docket sheet and filings in the 2006 Action. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *see also* Fed. R. Evid. 201. Further, on May 2, 2016, following the retirement of the Honorable Chief Judge Jorge A. Solis, the 2006 Action was transferred to the docket of the Honorable Sam R. Cummings, Senior United States District Judge.

travel to Texas at his own expense to testify in a postjudgment deposition in the court's Chambers in Dallas, which took place on September 16, 2015.  Further, on June 29, 2016, after numerous failed attempts to depose Mrs. Magliarditi in Texas and in California, the plaintiffs deposed her in Nevada, where she provided testimony that Mr. Magliarditi continues to exercise sole control over assets in various closely held companies and trusts.  That testimony is inconsistent with Mr. Magliarditi's prior testimony that he was no longer affiliated with the companies and trusts and that his wife had exclusive control over those entities, leaving him with no funds to pay the Judgment.  That litigation is ongoing, as evidenced by recent docket entries in 2016 and 2017.

On June 30, 2016, one day after deposing Francine Magliarditi, the plaintiffs filed this lawsuit against Mr. Magliarditi and several defendants who were not parties to the 2006 Action, alleging that Mr. Magliarditi fraudulently transferred assets to these new defendants in an ongoing effort to defraud the plaintiffs and prevent them from collecting on the Judgment.  The new defendants include Francine Magliarditi, sued in her individual capacity and as trustee of FRM Trust, DJM Irrevocable Trust, and Fane Trust (the "Trust Defendants"); ATM Enterprises LLC; DII Capital, Inc.; DFM Holdings, Ltd.; DFM Holdings, LP; DII Properties LLC; and Spartan Payment Solutions, LLC (the "Shell Company Defendants").

In the plaintiffs' First Amended Complaint the plaintiffs allege that Mr. Magliarditi has paid only $62 toward the Judgment.   The plaintiffs allege that Mr. Magliarditi and Mrs. Magliarditi, "are working together to defraud Plaintiffs and prevent them from collecting on the Judgment by hiding and transferring assets through the use of a labyrinth of layered shell companies and trusts [which are] shams, existing for no reason other than to hide assets, defraud Transfirst, and otherwise act as the alter ego of [Mr. Magliarditi]." ECF No. 11 at 2.  Seeking to unwind the alleged fraudulent transfers and to hold Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants liable for the Judgment entered in the 2006 Action, the plaintiffs assert the

following causes of action: (1) fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.006(b) and 24.005(a); (2) unjust enrichment; and (3) alter ego, alleging that Mrs. Magliarditi, the Trust Defendants, and the Shell Company Defendants "are alter-egos of [Mr. Magliarditi] and, therefore, they should be held jointly and severally liable with [him] on the Judgment." *Id*. at 2-3. The plaintiffs seek compensatory damages, restitution, punitive and exemplary damages, attorney's fees, injunctive relief, appointment of a receiver, and any other relief to which they are entitled. *Id.* at 30-31.

On July 8, 2016, the plaintiffs filed their sealed request for an *ex parte* temporary restraining order while this case was still pending in Texas. ECF No. 6. The plaintiffs sought to enjoin the defendants from directly or indirectly: (1) transferring, concealing, withdrawing, or otherwise disposing of any assets, property, or funds that they control or possess; (2) opening or closing accounts; (3) opening or accessing safe deposit boxes or rental storage units; and (4) opening or creating any new entities or trusts without prior approval of the court. The plaintiffs asserted that their application for a temporary restraining order must be pursued *ex parte*; otherwise, Mr. Magliarditi "will simply move his money to undisclosed accounts, as he has previously done over the past several years." *Id.*

District Judge Sam Lindsay found that the plaintiffs had established a prima facie case for the court's exercise of personal jurisdiction over Mr. Magliarditi, the Trust Defendants, ATM Enterprises, LLC; DII Capital, Inc.; DII Properties LLC; and Spartan Payment Solutions, LLC (hereinafter, the "Enjoined Defendants"). ECF No. 32. At the time Judge Lindsay ruled on the motion for temporary restraining order, the question of whether the court had personal jurisdiction over the remaining defendants was under consideration.

/ / / /

Judge Lindsay granted the ex parte application for temporary restraining order. ECF No. 33. He also ruled that he lacked personal jurisdiction over Mrs. Magliarditi in her individual capacity, DFM Holdings, Ltd. and DFM Holdings, LP, and thus he transferred the case to the District of Nevada. ECF No. 36. I was not aware a motion for preliminary injunction was pending until Mrs. Magliarditi filed an emergency motion to dissolve the temporary restraining order. ECF No. 48. I promptly set that motion for hearing. ECF No. 50. As I explained at the March 27, 2017, I cannot extend the TRO entered by Judge Lindsay because that TRO expired. Fed. R. Civ. P. 65(b)(2). However, I reinstate the TRO because I agree with Judge Lindsay's ruling that the plaintiffs have demonstrated a TRO is warranted.

## II.     Standard for Ex Parte TRO and Preliminary Injunction

To obtain a temporary restraining order, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, the court may issue a TRO without notice to the adverse party or its attorney only if both of the following requirements are met:

/ / / /

>   (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
>   (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). Thus, a TRO cannot be issued *ex parte* absent a clear showing that immediate and irreparable injury will result before the adverse party can be heard. *Id.*

### III. Discussion

Judge Lindsay granted the *ex parte* motion for a TRO. ECF No. 33. As discussed at the March 27th hearing, that TRO expired 14 days from its issuance because it was not extended by either Judge Lindsay or me. *See* Fed. R. Civ. P. 65(b)(2).

However, at the March 27th hearing the plaintiffs made an oral motion to reinstate the TRO. The defendants were at the hearing and thus this application technically was not *ex parte*. The defendants have not filed a written response to the original motion for a TRO nor would they have had time to do so prior to my ruling on the oral motion. However, they responded orally to the motion at the March 27th hearing.

After carefully reviewing the plaintiffs' Amended Complaint (ECF No. 11), application for a TRO and injunctive relief and the supporting declarations and evidence (ECF Nos. 6, 7), Judge Lindsay's prior findings (ECF No. 33), and the parties' arguments at the March 27th hearing, I conclude that the plaintiffs have made a sufficient showing to satisfy the requirements for a TRO.

####   A.   Substantial Likelihood of Prevailing on the Merits

I first consider whether the plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of this action in which they seek to pierce the corporate veil and hold the defendants liable for the Judgment as Mr. Magliarditi's alter egos.

/ / / /

The alter-ego doctrine permits a court to disregard the corporate fiction under certain circumstances to hold an individual liable for the debts of a corporation or to hold a corporation liable for the debts of an individual. *See LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). Traditional veil-piercing uses the alter-ego doctrine to break through corporate formalities and include the assets of a shareholder or other corporate insider as assets of a corporation. *See Id*. at 845-46. Reverse veil-piercing, at issue in this case, "involves a creditor reaching the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual." *Id.* at 846. "It is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid a pre-existing liability of the controlling party." *Id.* at 846 (quotation omitted). Under Nevada law, courts consider the following factors as indicative of the existence of an alter-ego relationship: "commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id.* at 846-47 (quotation omitted). However, "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.* (quotation omitted).

Having considered the allegations, legal briefs, supporting evidence filed with the plaintiffs' request for a TRO (including the sworn deposition testimony of Mr. Magliarditi, sworn deposition testimony of Mrs. Magliarditi, financial records, QuickBooks records of DII Capital, Inc. and ATM Enterprises, LLC), the parties' arguments at the March 27th hearing, and the applicable law summarized above, I conclude that the plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claim that the defendants are merely conduits for Mr. Magliarditi's fraud, acting as his alter egos, and existing to fund Mr. Magliarditi's personal expenses and conceal assets that would otherwise be available to satisfy the Judgment.

### B. Substantial Threat that Irreparable Harm Will Result Absent the Injunction

Further, the plaintiffs present evidence to support their contention that there is a substantial risk that, absent a restraining order, assets available to satisfy the Judgment will continue to be transferred and dissipated, and that prompt action is required. Given Mr. Magliarditi's conduct in the 2006 Action (in which Judge Solis found that he had willfully provided false testimony concerning material matters in an effort to influence the outcome of the proceeding, as well as his postjudgment discovery abuses, as evidenced by Magistrate Judge Paul Stickney's order sanctioning him), and evidence concerning the conveyance of funds to the alleged alter-ego defendants, I am persuaded, as Judge Lindsay was, that absent the injunction the Judgment entered in the 2006 Action will continue to go unpaid, as it already has for several years.

### C. Threat of Injury to Movants Outweighs Threat of Harm to Defendants

With respect to the third factor the threat of harm to the defendants, if any, is not greater than that to the plaintiffs, who have been unable to collect on their Judgment entered in the 2006 Action. The defendants did not move to dissolve the TRO until over a month after it was entered. *See* ECF Nos. 33, 48. At the hearing in this matter, the defendants did not identify any particular harm they were suffering or would suffer if I re-imposed the TRO. Moreover, I have set the preliminary injunction hearing for April 10, 2017. Thus, this TRO is of limited duration, as contemplated by Rule 65. In the interim, the defendants may seek leave of court to distribute specific funds for specific purposes upon a showing of good cause. Finally, any harm to the defendants has been caused by Mr. Magliarditi's recalcitrant and contumacious conduct in refusing to pay a lawful judgment.

### D. Granting Injunctive Relief Will Serve the Public Interest

As to the fourth factor, I find that granting the TRO will serve the public interest. The public has an interest in ensuring that judgments issued by the courts, and affirmed on appeal, are

enforced, and in preventing judgment debtors from unlawfully transferring and otherwise dissipating assets instead of paying their judgment creditors. I therefore, will grant Plaintiffs' oral request for a TRO.

### IV.   Conclusion and TRO

For the reasons herein stated, I grant Plaintiffs' oral motion for a temporary restraining order as to defendants Dominic J. Magliarditi; Francine Magliarditi in her individual capacity and in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; DFM Holdings, Ltd.; and DFM Holdings, LP; and order as follows:

1. Dominic J. Magliarditi; Francine Magliarditi in her individual capacity and in her capacity as trustee for FRM Trust, DJM Irrevocable Trust, and Fane Trust; DII Capital, Inc.; ATM Enterprises, LLC; and Spartan Payment Solutions, LLC; DFM Holdings, Ltd.; and DFM Holdings, LP; and their officers, agents, servants, employees, and attorneys, and all other persons in active concert with the identified parties in this subparagraph (collectively the "Enjoined Defendants"), are hereby enjoined from, directly or indirectly: (1) transferring, concealing, withdrawing, or otherwise disposing of any assets, property, or funds that they control or possess; (2) opening or closing accounts; (3) opening or accessing safe deposit boxes or rental storage units; and (4) opening or creating any new entities or trusts without prior approval of the court;

2. The plaintiffs are hereby authorized to notify financial institutions and other persons who may control or possess property, funds, and assets belonging to, or held for the benefit of, any Enjoined Defendant, of the existence of this temporary restraining order, so that the plaintiffs can obtain an honest accounting of the Enjoined Defendants' property and assets and the value thereof; and

3.      The plaintiffs shall ensure that the cash bond in the amount of $25,000 that was posted in Texas is transferred to the Clerk of Court for the United States District Court for the District of Nevada. The previously posted bond shall serve as security in the interim.

IT IS SO ORDERED this 28th day of March, 2017, *nunc pro tunc* to 1:58 p.m. on March 27, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE