# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRANSFIRST GROUP INC., et al., | Case No. 2:17-cv-00487-APG-VCF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO WITHDRAW MONTHLY EXPENSES FROM THE FANE TRUST** |
| DOMINIC J. MAGLIARDITI, et al., | |
| Defendants. | (ECF No. 138) |

Defendant Francine Magliarditi moves to withdraw over $40,000 per month to pay expenses. She also seeks a one-time distribution to pay over $109,000 in attorney's fees for both her own counsel and for her husband Dominic's counsel. She filed a breakdown of her requests in an *in camera* submission to the court. The plaintiffs oppose, arguing there is no support for the requested distributions, and over $40,000 per month is unreasonable on its face.

I previously indicated in the preliminary injunction order that Francine could move to withdraw funds "for specific purposes upon a showing of good cause." ECF No. 109 at 17. I have discretion to modify the preliminary injunction to release funds to Francine to pay living expenses. *See S.E.C. v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001) (stating if courts have the power to freeze assets they logically have the "corollary authority" to release funds for living expenses) (quoting *S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001)). To determine whether to release funds, I weigh Francine's interest in having funds for "ordinary and necessary living expenses" against the plaintiffs' interest in preventing the dissipation of assets. *See S.E.C. v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *3 (N.D. Tex. Apr. 14, 2004). In making this evaluation, I consider whether Francine has access to other sources of funds and whether the requested distributions are for luxury items rather than necessities. *Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d at 430. I address below the various categories of requested distributions.

### A. Rents

I allow a monthly distribution of $1,000 per month to pay rent on the 9501 Canyon Mesa property in Las Vegas so that Francine has a place to live. However, Francine provides no reason why she requires $6,400 per month for another home in California. Although she denies that home is a vacation home (ECF No. 144 at 6-7), she provides no explanation for why she needs it given that she resides in Las Vegas. Based on the lease Francine provided, the California home is a month-to-month rental, and thus she will not suffer severe financial hardship by cancelling it. *See* Francine Magliarditi's *In Camera* Submission of Monthly Budget Items for July 2017, Ex. A. I therefore deny the request for monthly rent for the California property.

### B. Utilities

Because I have denied rent for the California property, I also deny the related utility expenses. As for the Nevada property, Francine requests $58 for her gas bill and $300 for her energy bill. I allow monthly distributions for these bills, but only for the exact amount of the bills. As the weather changes, Francine's gas bill may go up while her energy bill (which is $256, not $300) may go down. Consequently, I currently approve $58 to pay the gas bill and $256.39 to pay for the energy bill for the 9501 Canyon Mesa property. Future bills will need to be submitted for approval in the amount incurred only.

### C. Food

Francine requests $3,500 per month for food. That amount is unreasonable on its face. Per the U.S. Bureau of Labor Statistics for 2015 (the last available year), a family of 2.5 persons spent an average of $7,023 per year on food. Francine offers no explanation why each month she needs half the amount that an average family spends on food for an entire year. She offers no evidentiary support for this request. I will allow a quarter of the annual average amount ($1,755.75) for food for the remainder of 2017.

/ / / /

/ / / /

/ / / /

### D. Miscellaneous

Francine asks for $1,000 per month for "miscellaneous" expenses. She provides no explanation as to what might fall into this category nor offers any evidence in support. This request is unreasonable on its face. I therefore deny it.

### E. Automobiles

Francine requests $633.08 per month for lease of a Mercedes Benz. She also requests $91.41 to pay for insurance on the Mercedes Benz. She seeks to pay insurance on three other vehicles, although she provides no explanation for who owns the vehicles or why she is paying the insurance. Finally, she requests $400 per month in gas.

I allow the $633.08 per month for the lease of the Mercedes Benz. Per the lease contract Francine provided, she may suffer a substantial penalty if the lease is terminated early. *See In Camera* Submission, Ex. H. Additionally, I grant $91.41 to pay the insurance on the Mercedes Benz. *Id.*, Ex. I at 2 (6-month premium of $548.51).

I deny the request to pay insurance on the other vehicles. There is no explanation for why insurance for a Mazda, a Toyota, and a Saturn are necessary living expenses for Francine.

Finally, I allow $175 per month for gas. Per the U.S. Bureau of Labor Statistics for 2015 (the last available year), the average family spent $2,090 per year for gas and motor oil. Francine has not presented evidence that her driving needs exceed that of an average family.

### F. Health Insurance

I grant the request to pay for health insurance for Francine, her husband Dominic, and their adult child Alexandra. However, the evidence provided does not show what period the premium amount of $1,132.55 covers. Upon proof that this amount is the monthly premium, it will be approved for a monthly distribution. If this is a semi-annual payment, I will approve a lump sum distribution.

/ / / /

/ / / /

/ / / /

### G. Life Insurance

I grant the request for $2,316 per month for premium payments on three life insurance policies. However, if these policies lapse for any reason, Francine must notify the court immediately so that the funds to pay the premiums are no longer distributed to her.

### H. Renter's Insurance

For the same reasons already discussed, I will not allow the renter's insurance for the California property.

### I. College Expenses

I deny the request for college expenses. Francine's children are adults. These are not necessary expenses for Francine. Moreover, Francine does not explain why tuition would be a monthly (as opposed to a one-time) expense.

### J. Credit Cards

I deny the request for $9,500 per month for credit card expenses. There is no explanation for what these expenses are nor is there any justification for why they would be incurred on a monthly basis. That amount per month is unreasonable on its face. Even if this was a request for a one-time distribution, there is no explanation of what these bills cover. To the extent they were expended for luxury items or vacation airfare, they would be denied.

### K. Legal Fees

Francine requests $53,687.85 to cover her own legal fees along with $56,259.50 to cover Dominic's legal fees. Whether to allow payment of attorney's fees out of frozen assets lies within my discretion. *See United States v. Monsanto*, 491 U.S. 600, 615-16 (1989); *FSLIC v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990). Courts have "recognized the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *Ferm*, 909 F.2d at 374.

Francine provides no explanation as to why funds should be released to pay for Dominic's attorney's fees. I deny that request.[1]

I deny Francine's request to pay her own attorney's fees as well. Francine avers she has no other source of funds other than what is contained in the FANE Trust. ECF No. 144 at 6. However, as noted in my preliminary injunction order, over $1 million was withdrawn from DII Capital and ATM Enterprises' Merrill Lunch accounts. ECF No. 109 at 15. To date, I have seen no accounting for what happened to those funds. Additionally, some of Francine's exhibits raise more questions than they answer. For example, one of Dominic's credit card bills shows two payments totaling over $5,000 were recently made. *In Camera* Submission, Ex. V. There is no explanation of where Dominic, who supposedly has no assets, was able to obtain over $5,000 to make this payment. Similarly, the Bloomingdale's credit card shows a payment in the amount of $1,240.74 and the Nordstrom card shows a payment in the amount of $1,500, with no explanation of where those funds came from. *Id.*, Exs. Z, AA. Francine's attorneys' records are even more puzzling. After I entered the temporary restraining order on March 28, 2017, Francine made payments to her attorneys on March 31, 2017 in the amount of $17,819.75 and on June 8, 2017 in the amount of $10,000. *Id.*, Ex. BB. Additionally, someone apparently made $5,000 payments to Dominic's attorneys' trust account on May 10, 2017 and June 29, 2017. *Id.*, Ex. CC.

Francine avers that she is making do by paying for items with credit cards and obtaining assistance from family members. ECF No. 144 at 6. Other than her affidavit, however, there is no evidentiary support for her statement. As another court observed, "[p]erhaps [I] would be in a better position to analyze [Francine's] request if [she] provided [me] with an accounting." *S.E.C. v. Private Equity Mgmt. Grp., Inc.*, No. CV 09-2901 PSG (EX), 2009 WL 2058247, at *3 n.1 (C.D. Cal. July 9, 2009). But given the shenanigans surrounding the defendants' movement of funds and their failure to be forthcoming in post-judgment discovery in the Texas case, I decline

---

[1] Francine also provides no explanation as to why the amount requested for Dominic's fees does not deduct the $10,000 that apparently has been deposited in his counsels' trust account. *See In Camera* Submission, Ex. CC.

to allow a distribution for attorney's fees absent a more fulsome accounting of the assets to which Francine actually has access.[2]

**L. *In Camera* Submission**

Francine does not explain why her monthly accounting was submitted *in camera*. I will retain her attorneys' records *in camera*. However, I see no reason why the remainder of her exhibits should not be available as part of the public record in this case, with appropriate redactions.[3] I therefore will direct Francine to file a publicly accessible version of her *in camera* submission with the following redactions:

- the account numbers and phone numbers on any exhibit;
- the addresses where her children live and account numbers on Exhibits Q and S;
- the student identification number on Exhibit T; and
- the attorney records in Exhibits BB and CC.

To the extent Francine asserts that further material should be sealed beyond the above redactions, she must file a motion to seal that specifically identifies what portions of the *in camera* submission should be sealed and provides adequate support for doing so under *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

**M. Conclusion**

IT IS THEREFORE ORDERED that defendant Francine Magliarditi's motion for leave to withdraw monthly expenses **(ECF No. 138) is GRANTED in part and DENIED in part**. The motion is granted as follows:

1. Francine Magliarditi may withdraw from the enjoined accounts the following amounts on a monthly basis:

---

[2] Despite the lack of an accounting, I will grant Francine ordinary living expenses. That may change if discovery reveals that she has access to other assets.

[3] Exhibits A and B are lease agreements. Exhibits E-G are utility bills. Exhibits H-K are car lease and insurance bills. Exhibits L-O are life and health insurance bills. Exhibit P is a renter's insurance policy. Exhibit R is a generic "cost of attendance" breakout for the University of Nevada, Reno School of Medicine. Exhibits Q and S appear to be rental documents related to her children. Exhibit T is an invoice from Washington University. Exhibits U-AA are credit card bills that do not itemize purchases.

    - $1,000 per month to pay rent on the 9501 Canyon Mesa property in Las Vegas;

    - $633.08 per month for the lease of the Mercedes Benz;

    - $91.41 to pay the insurance on the Mercedes Benz;

    - $175 per month for gas; and

    - $2,316 per month for premium payments on three life insurance policies.

  2. Francine Magliarditi may withdraw from the enjoined accounts on a one-time basis:

    - $58 to pay the gas bill for the 9501 Canyon Mesa property;

    - $256.39 to pay for the energy bill for the 9501 Canyon Mesa property; and

    - $1,755.75 for food for the remainder of 2017.

IT IS FURTHER ORDERED that upon proof of the amount of the monthly or semi-annual premium for health insurance, that amount will be approved for a distribution as appropriate.

IT IS FURTHER ORDERED that if the life or health insurance policies lapse for any reason, Francine must notify the court immediately so that the funds to pay the premiums are no longer distributed to her.

IT IS FURTHER ORDERED that on or before September 1, 2017, Francine shall file a publicly accessible version of her *in camera* submission with the following redactions:

    - the account numbers and phone numbers on any exhibit;

    - the addresses where her children live and account numbers on Exhibits Q and S;

    - the student identification number on Exhibit T; and

    - the attorney records in Exhibits BB and CC.

To the extent Francine Magliarditi asserts that further material should be sealed beyond the above redactions, she must file a motion to seal on or before September 1, 2017, that specifically identifies what portions of the *in camera* submission should be sealed and providing adequate support for doing so under *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). If Francine Magliarditi files a motion to seal, then the redacted version of her *in camera* submission will be due seven days after I rule on the motion to seal.

IT IS FURTHER ORDERED that if this order is insufficient to permit the financial institutions holding the subject accounts to release the funds as described above, Francine Magliarditi's counsel may prepare an order sufficient for that purpose. If so, a draft of that order shall be presented to the plaintiffs' counsel for prior approval before submitting it to the court.

DATED this 29th day of August, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE